ALMIRA DUNBAR *vs.* JOHN and JOSEPH DUNBAR, executors of
OLIVER DUNBAR.

When a testator gives all his personal estate to his wife, and makes no provision for
the payment of debts, the law makes the debts a lien upon the personal estate ; and
it operates like his giving her his personal estate, upon condition of her paying the
debts.

When a devise of $200 is made to the widow, as a lien upon a farm devised to others
upon condition of paying this $200, the executors may, if they choose, let the de-
visees of this farm take possession at the end of one year, and do not thereby render
themselves liable for this $200 : but the widow must pursue her lien upon the land,
by a bill in chancery.

The widow, in such estate, has no claim upon the executors to account for the rents
and profits of the real estate, as personal estate, any longer than one year ; there
being no extension of the time for settlement, by the court of probate.

This was an appeal from a decree of the court of probate for the
district of Hartford, allowing the account of the executors on the set-
tlement of the estate of Oliver Dunbar. The testator, by his will,
bequeathed *all the personal* estate, except some trifling articles, to
his widow, *Almira Dunbar* ; and also the *home farm* to her, for life,
and remainder over to *John* and *Joseph Dunbar*, the executors, upon
certain trusts and conditions. A farm called the Ben Campbell farm,
and a small piece of land adjoining, were devised to *Joseph Dunbar*,
one of the executors. A farm called the James Campbell farm,
or rather a certain part of it, lying east of the road, was devised to
William B. Waldron, Oliver D. Waldron, and Andrew Jackson
Waldron, minor children of Jonathan Waldron, upon their
paying in money or labor two hundred dollars to *Almira
Dunbar*, the testator's widow. The widow continued in pos-
session of the home farm, taking the profits, during the first
season after her husband's death, when she released her life
estate to the executors by bond, &c., and they immediately
entered, and had ever since taken the rents and profits. *Joseph
Dunbar* immediately entered, on the death of the testator, (which
happened 1st May, 1828,) into possession of the Ben Campbell
farm, and had ever since taken the rents and profits. The execu-
tors, at the end of one year from the death of the testator, put the
guardian of the young Waldrons into possession of the James
Campbell farm devised to them, without payment, or securing to
be paid, the $200, to the widow, and had not rendered any ac-
count for the rents and profits. The debts and expenses of ad-
ministering had all been paid out of the personal estate. The
executors rendered their account to the court of probate, and, in
the account rendered, no credit was given for the rents and profits
of any part of the real estate. The court, however, ordered the

executors to account for one year's rent of the Ben Campbell <span>Windsor, February, 1831.</span> farm, which was accordingly credited ; and the court refused to order them to account any further for rents and profits ; nor had the executors paid the widow the $200, charged on the estate devised to the young Waldron children, nor charged the estate with such payment. From the allowance and exceptance of this account,an appeal was taken to this Court by the widow.

Dunbar *vs.* Dunbar's ex'rs.

*Mr. Marsh, in behalf of the appellant,* contended,—1. That the executors were liable to account for the rents and profits of all the real estate, till a final settlement of the estate, and until the estate devised is set oft to the devisees by order of the court of probate ; and that these rents and profits are to go into a general fund for the payment of debts, or for the benefit of those, who are entitled, under the will, to the *residuum* of the personal estate. 2. That the executors cannot exhibit, and have their accounts settled, until they put the widow in possession of the two hundred dollars, which is a lien on the estate devised to the young Waldrons.

1. The executors are liable to account for the rents and profits of all the real estate, till the devisees are entitled to enter under an order of the court of probate. No such order has passed the court. On the death of any one, whether testate or intestate, all the estate vests in the executor or administrator, in trust to be disposed of according to law, either *under the will,* or *under the statute of descents,* or distribution, as the case may be. The executor or administrator is required, by the statute, to cause to be made a true and perfect inventory of all the estate, both real and personal, of the deceased, and exhibit the same to a committee of appraisal, who are to return their appraisal to the court of probate, and deliver an attested copy to the executor or administrator ; and must account for the inventory at the appraisal, &c.—*Stat.* p. 340, s. 41, 44. The personal estate of every person deceased (with certain exceptions) shall stand chargeable with the debts and funeral expenses of the deceased ; and if the same shall be insufficient, the real estate, except the widow's dower, shall stand chargeable for such part thereof as the personal estate shall be insufficient to pay.—*Stat.* 341, s. 46. The executor and administrator, neglecting to sell real estate (when necessary, and when he can obtain license) for the payment of debts, shall be deemed guilty of waste.—*Stat. p.* 343, s. 51. It is made the duty of executors and administrators to keep, and maintain in tenantable re-

KKK

Windsor,
February,
1831.

Dunbar
vs.
Dunbar's ex'rs.
pair, all houses, buildings, and farms, appertaining to the estate of the deceased, *out of the avails thereof*, and the same to deliver over to the devisees or heirs, in such repair, at the time the probate court shall direct.—*Stat. p.* 344, *s.* 55.    Executors and administrators are empowered to commence, and maintain, an action of trespass *quare clausum fregit*, or ejectment, or any other proper action, to recover the seizin or possession of any houses, lands, tenements or hereditaments, or any damage done thereto, in the right of the testator or intestate ; or may prosecute any such action, already commenced by testator or intestate, to the use of the devisees, heirs or creditors of such estate, as the case may be ; and no such action shall be maintained by any heir or hiers, devisee or devisees, until such estate be set off to them by order of the court of probate.—*Stat. p.* 346, *s.* 63.    It is made the duty of the administrator of every solvent intestate estate, to furnish, out of such estate, a support for all minor children of the intestate, until they arrive at the age of seven years ; unless the heirs shall give bonds to furnish the same.—*Stat. p.* 344, *s.* 56.

It is understood to have been often decided in this Court, that all heirs and devisees must take and hold through the administration ; and the statute seems to be express to this point.    The heir or devisee has no right of entry, until he obtains it through an order of the court of probate, on the final settlement of the estate. It would seem, therefore, that he can have no right to the accruing rents and profits, till his right of entry is complete by such order.    The whole and entire right of possession, and all remedies known in law to obtain it, are expressly given to the executor, and as expressly taken from the heir and devisee. The action of trespass and ejectment are given to the executors to enable them to recover for any damage done to the real estate ; and this for damage done during the life time of the testator.    Such damage, when recovered by the executor, must be personal estate, and go into the personal fund, for the general purposes of the estate ; that is, in the language of the statute, *(63d section,)* " *to the use of the devisees, heirs or creditors, as the case may be.*"    Such damages, and also the rents and profits, when received, are undoubtedly personal estate, and come into the hands of the executor as such, and as such must be by him inventoried ; and the statute, *(sec.* 46,) makes the personal estate chargeable in the first instance with the debts.    The 55th section makes it the duty of the executor to keep, &c., the real estate in repair *out of the avails*, that is, the rents and profits ; but how can he do this, if the

devisee has a right to the immediate perception of the rents and profits? And how is the administrator of a solvent intestate estate to provide for the children under seven years of age, " out of such estate," (sec. 56,) if the older heirs have a right to enter immediately upon their shares. " Out of the estate," probably means out of the rents and profits ; as no authority is any where given to sell for this purpose. The executors, in this case, no doubt had a right to take immediate possession. When possessed, however, they hold not as devisees, but as executors ; that is, in trust, or to account —to account for the lands if sold, and for the rents and profits, to the general fund, on the final settlement of the estate. It will be observed, that the will does not, in terms, make any provision for the payment of debts, funeral expenses, or the expense of administration ; but the law charges all these on the personal estate in the first instance. The real estate, with the exception of a life estate to the widow in one farm, is all devised away to others, and the personal estate all, or nearly all, is bequeathed to the widow. The executors, who are also the principal devisees, enter on the real estate, occupy it for themselves without account, and go on and administer the estate, pay the debts, &c., out of the personal fund which is all given to the widow, and constitutes her principal interest in the estate. If the money, arising from the rents and profits of the real estate, were wanted for the payment of debts, and expenses of administration, can it be pretended, that they should go to the devisees, and have the lands sold to raise money for the payment of debts? If not, then the rents must go into the personal fund for that object. If they must go into the personal fund, in that case, it is because they are, in the hands of the executor, personal estate, and, if so, they must go into that fund in every case. There is no other consistent way of reconciling the various provisions of the statute. According to this view of the subject, the rents of all the estate, from the decease of the testator to the time of the final settlement of the estate, and the order of the court of probate to deliver the possession of their respective shares of the real estate to the respective devisees, belong to the fund of personal estate.

It appears, that, at the end of the first season after her husband's death, *Almira Dunbar*, the widow, released her title to the home farm, in which, by the will, a life estate was devised to her, to *John* and *Joseph Dunbar*, the executors named in the will. This deed is a mere release of the life estate, which she held under the will. This she did not hold as dower, nor was it given in lieu of dower. She held, like others under the will, merely as devisee.

WINDSOR,
*February,*
1831.

Dunbar
*vs.*
Dunbar's ex'rs.

Dunbar
vs.
Dunbar's ex'rs.

Whatever, therefore, she was entitled to, as such devisee, and that only, would pass by the deed. It will follow, if a correct view has been taken of the rights of the devisees under the will, that the executors, notwithstanding this release, are still bound to account to the general personal fund for the rents and profits of this farm, as well as of the other real estate. By the conveyance, she merely places them in her shoes as devisee in relation to the life estate in the homestead. If she could not enter immediately on the death of the devisor, and take rents and profits as against the executors, as devisee, then certainly she has not conveyed to them the right to the same thing, in relation to the general interests of the estate. The statute seems to us to have adopted a broad and general system for the settlement of estates ; and this system is based on broad, uniform, and consistent principles. The great outline of this system, and its uniform object, appears to have been, to vest the title and right of possession, and controul, of every thing pertaining to the estate, except the widow's dower, in the personal representatives of the deceased ; and not only to place, but to keep them there, till, in the first place, the widow should have her dower assigned, and such provision made for her out of the personal estate, as she might be entitled to under the statute ; and until, in the second place, all the debts, funeral expenses and legacies should be paid ; and, in the third place, an order passed by the court of probate, assigning to each heir or devisee his share in the estate, according to the statute, or the will, as the case might be. When this is all done, and not till then, can the executor or administrator be said to have *fully administered* ; and he is then, and not till then, entitled to his *quietus*. To effect these important objects, the statute has given to the personal representative adequate power, and laid him under all the responsibility necessary for the security of all concerned. It is believed, that this system is more perfect, and better calculated to point out the duties, and secure the responsibility, of the executor and administrator, and the rights of all concerned, than is to be found in any other code of law extant. As a system it is perfectly simple, but as such system, it must be administered on general principles. The executor is to inventory and account for every thing, which comes to his hands, either at first or at any subsequent period. The rents, like other property, must be inventoried, or credited, as received. If, under *any* circumstances, the executor must credit and account for rents, he must under *every* circumstance. If for the payment of debts

they must go into the general fund, so they must, in all cases, go there, for the benefit of the *residuum*. If the creditors have a right to insist on their forming a fund for their benefit, then those, who are entitled to the *residuum* have a right to insist, that they shall be applied to the payment of debts in aid of the *residuum*.

2. The remaining question is, whether the executors, in executing the will, are not bound to keep the possession of the farm devised to the Waldrons, till, out of the rents and profits, or sale of the estate, they can raise the two hundred dollars, bequeathed to the widow out of that estate. No remedy is given by the will to the widow to enforce the payment, and yet the payment is a lien on the estate ; and the payment is a condition precedent to the right of the devisees to take possession. The executors are bound to execute the will, and have the right, and it is their duty, to retain the possession, till this payment is made. This lot is given to the devisees *upon their paying*, &c., that is, if they pay, or when they pay, &c.

*Mr. Collamer, for the appellees.*—I. 1st. The executors contend, that they are not chargeable with the use of the real estate ; that a devisee takes *by the will*, and the estate vests on the decease of the testator. That this is the case by the common law there is no doubt. The devisee is entitled to immediate possession and use.

2d. This is not altered by our statute. The 49th section of the probate act, and those which follow, only give to the executor a lien on the real estate, on a certain contingency, for the benefit of creditors and legatees, (where the sum is certain,) that is, on failure of personal assets. This is in no way inconsistent with the immediate possession and use of the devisee or heir. If the contingency does not happen, no right exists in the executor.

3d. The *use* can never be claimed for any purpose, to which the *estate itself* could not be appropriated. This widow has a legacy of the personal property. The *law* charges that personal property with the debts. She is therefore merely residuary legatee of the personal estate. The residuary legatee cannot claim sale of the real estate. Though the estate may be sold for payment of debts and *legacies*, yet this cannot include a residuary legacy, as by the very *terms* of the legacy, it is to be the *residuum* after payment of debts and specific legacies. The *amount* to be raised for such legacy by sale could never be ascertained. As the lien on real estate was never, by law, made for the benefit of

WINDSOR,
*February*,
1831.

Dunbar
*vs.*
Dunbar's ex'rs.

a residuary legatee, she can therefore claim, in this case, no benefit from the real estate, or its use. It is to be presumed, the testator as much intended the persons, to whom he gave his real estate, should have the immediate and entire use and benefit of it, as of any specific legacy whatever ; and the law should not, when unnecessary to creditors, interfere to transfer, by construction, any of this benefit to another.

4th. Under a statute, in this respect precisely like our own, in Massachusetts, it has been decided, that lands *devised* are not subject to sale for the payment of *legacies* of any kind.—*Sheple* vs. *Farnsworth*, 4 *Mass. Rep.* 632 ; 2 *Dane*, 245. Why, then, the *use* be taken ?

II. The objections to this doctrine are founded on two certain sections of our statute.

1st. The 55th section of the probate act provides,that the executor shall keep buildings, &c., in repair, and deliver them to heirs and devisees, at the time the probate court shall direct. In regard to this, it is insisted, 1st. That the repairs are to be made " *out of the avails*" of the estate. Now, if these went into the general fund, why does the statute provide out of what fund the repairs are to be made ? 2d. The section is general, and is to be construed with reference to the different purposes, for which it was designed. The last clause is intended for those cases, where division is required by order of court, under the statute. The probate court, as one of limited and statutory jurisdiction, makes no decrees, but when expressly authorized and required. None is directed here, none necessary, nor was one ever made in the state except on division. 3d. This statute is a compilation from the old laws. By the 50th section of the statute of 1797, precisely the same provision is made as in this section, except the last clause ; and there it says, " until division or partition thereof shall be made." The present section amounts but to the same provision. 4th. The time directed by the court only makes it *imperative* on the executor ; but if he actually delivers the possession, and it is actually received, as in this case, it is equally good without an order.

2d. It is said, the 63d section, which provides for the actions, " *quare clausum frigit*," and of " *ejectment*," in the name of the executor, for the *use* of the devisees, heirs, or creditors, and prohibiting any such action to heirs or devisees, until " set off" to them by order of court, implies, that the executor is to have possession and use. To this, it is answered, 1st. This being express-

Windsor,
February,
1831,

Dunbar
*vs.*
Dunbar's ex'rs.

ly provided to be "*to the use*" of the devisee, &c., is not to be construed to be for the *use* of the executor. 2d. The words, "*set off*," clearly imply that this is a provision only for such cases as require division or partition. 3d. This is only making certain the form of action, appointing a trustee ; and no more gives the *use* than any other case of legal trustee for suit. 4th. This has nothing to do with use and possession as between executor and devisee, but only as against third persons.

III. If however it should be considered that our probate system requires, that the executor have the possession and use of real estate, for a term in the first instance, and that the proceeds go into the personal fund, though not necessary to the payment of debts, still the executors insist, that this does not extend beyond one year.

1st. The words *devisees* and *legatees* are, in our statute, frequently used as synonimous or convertible terms ; as in section 49, (*page*, 343,) and it may be considered, that, by this statute, devisees and legatees are intended to be put on the same ground, as to the commencement of their right ; *both* to be paid by order of court, and *both* to hold by testament and administration, even if the legacy or devise be certain and specific.

2d. If this be so, it becomes important to inquire, when does a legacy become due ? By the 48th section, the only one on the subject, debts and legacies are to be paid, when the court order, " not exceeding in the first instance one year ;" subject to being extended by the court another year. The 58th section prohibits any suit until the expiration of such term. But in this case, the court made no order ; and both the one and two years had expired, and no order could be made. Is the legacy never to be due ?

3d. In such case, it is insisted, the legacy is due at the expiration of the first year, at farthest ; and as it is so by common law, the executor has no right to withhold under an order which is never made.—2 *Dane*, 242.

4th. Every legacy is payable *with interest*, if there are assets ; and, therefore, the executor is not to withhold it, unless by an order under the statute.

5th. This order of *time* for payment of a legacy or debt, or delivery of a devise, is only necessary where the right depends on it, or the executor will not pay without ; but the right to a debt, legacy, or devise, given absolutely, is anterior to, and independent of, the order ; and, therefore, the executor may pay or deliver it as soon as he pleases without order, if creditors are not injured ;

Dunbar
*vs*
Dunbar's ex'rs.

and in this case, having delivered possession, and creditors not injured, his interest is ended.

HUTCHINSON, C. J., *pronounced the opioion of the Court.*—— The testator having bequeathed to the widow, the appellant, all his personal estate, and made no provision for the payment of his debts, she now claims whatever the law will give her, to replace that part of the personal estate, which went to pay debts. It is probable, the testator wholly forgot to make provision for the payment of his debts, or else he thought he owed little or nothing ; and, for that reason, made no provision for their payment. But it seems, that claims to the amount of $1,200, or more, have been substantiated against the estate, which absorbs more than half of the available personal property. The law makes the debts a lien upon the personal estate, first, and then upon the real estate. Under the circumstances of this case, the import of this legacy to the widow is, that she have what remains of the personal estate after paying all the debts. The ingenuity of counsel has been displayed in devising some consistent method to take this burden, of paying the debts, off of the widow. Whatever of the rents and profits of the real estate, during settlement, can be added to the fund of personal estate, it wonld relieve *pro tanto*. The court of probate allowed these rents, for one year after the decease, of all the real estate not occupied by the widow. She now claims that the executors be charged with the after rents, till the settlement in fact took place. We see no way in which to support this claim. The creditors, legatees, and devisees, have a like claim to the possession and use of their portion of the estate, at the end of the year allowed by law for settlement, unless the executors procure a further time to be allowed by the probate court. None was allowed nor prayed for, as we learn. It is probable the debts and legacies were paid, and the legatees took possession at the end of the year, given for settlement. If it were not so, the neglect of the executors to settle their accounts, could not alter the rights of the different persons interested. It certainly could not transfer the profits of a legacy in real estate to the personal fund, for the benefit of the widow. In considering her claim to be treated as residuary legatee, *pro tanto*, we find the same difficulty. Indeed, there is nothing but these profits of the real estate to be called a *residuum*. The specific legacies must all be first satisfied before we can talk about a residue.

This will has fixed no time for the payment of any of the lega-

ies. There is, therefore, no better rule, than for the executors to occupy the year allowed by law in settling, and ascertaining what claims there are upon the estate, and take care of and improve the estate in the mean time, and render their account at the end of the year, and charge the repairs and credit the income thus far, and let the court then make the closing orders concerning the estate. And, if the settlement is delayed for any longer period, let the accounts be closed as of that period, and let the executors make each as if he received his portion at that time, and this will do justice to all. The decision of the court of probate, making the executors account for the rents of the real estate during the first year, and permitting the legatees to hold possession without account, after the year, amounts to the same thing now named.

A case might occur, in which justice would require that repairs should be made on the portion of one devisee, and he bear the expense; but nothing of that appears in the present case.

A further claim is urged by the appellant, that the executors ought not to have permitted the Waldrons to take possession of their legacy, until the two hundred dollars fixed as a lien upon that legacy was paid to the appellant. We discover no necessity for compelling the executors to interfere with this legacy, nor with the two hundred dollars. The will has pointed out no particular duty to the executors in this respect. The two hundred dollars are not given to the appellant, as a legacy to be paid by the executors. All that is said about it is, that the land is given to the Waldrons upon their paying the appellant this sum. We think the most practicable way is to treat this as a lien upon the land which the appellant can enforce. She may bring her bill in chancery and obtain such a decree as will ensure her the money, or the land instead of it.

The decree of the court of probate is affirmed with costs; and this decree must be certified to the court of probate.